UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
MIRSADA MURATOVIC,

                Plaintiff,

    -against-

MARKET SOLUTIONS GROUP, INC. d/b/a ZAVOR,

                Defendant.
───────────────────────────────

**MEMORANDUM & ORDER**
**21-CV-562 (NGG) (TAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendant Market Solutions Group, Inc.'s ("Zavor")[1] motion to dismiss for failure to state a claim. (*See* July 28, 2022 Notice of Mot. to Dismiss (Dkt. 29); Mem. of Law in Supp. of Mot. to Dismiss ("Mot.") (Dkt. 29-3).) On August 19, 2022, Plaintiff Mirsada Muratovic filed an opposition to the motion. (*See* Mem. of Law in Opp. ("Opp.") (Dkt. 30).) On September 2, 2022, Zavor filed a reply. (*See* Reply in Further Supp. ("Reply") (Dkt. 31).) For the reasons that follow, the court GRANTS Zavor's motion to dismiss without prejudice.

## I. BACKGROUND[2]

On or about February 23, 2018, Muratovic suffered burns when she opened a pressure cooker with contents that remained under

───────────────────────────────

[1] Market Solutions Group, Inc. allegedly does business under the name "Zavor," which is the name used to refer to the entity in the Complaint. The court follows the same convention.

[2] The following facts are taken from the Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022). Zavor submitted two affidavits in support of the motion to dismiss, (Dkts. 29-1, 29-2), which are not properly before the court on this motion to dismiss, and whose consideration would require the court to convert the motion to

pressure, causing the "scalding hot contents to be forcefully ejected" from the appliance. (First Am. Compl. ("Am. Compl.") (Dkt. 20) ¶ 7.) At the time, she was using the pressure cooker to "prepar[e] meals for herself and/or family." (*Id.* ¶ 24.) According to Muratovic, the pressure cooker should have "prevent[ed] the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released." (*Id.* ¶ 25.) While the pressure remains unreleased, there is "heat and steam still inside the unit" and opening the lid can cause the contents to be "projected" out of the appliance, potentially causing injuries, as Muratovic alleged happened to her. (*Id.* at 3.) That the pressure cooker could be opened before it is safe to do so is a result of a design and manufacture defect, and representations made by the manufacturer regarding the product's safety were therefore false. (*Id.* ¶¶ 25, 27, 30.)

The Complaint does not clearly specify what pressure cooker injured Muratovic. The only potential reference to the specific appliance involved in the incident is to the "EZ Lock Pressure Cooker." (*Id.* ¶ 1.) The Complaint states that this pressure cooker is identical to the one "at issue in this case," and includes a footnote linking to a product listing for a pressure cooker with that name on Zavor's website. (*Id.* ¶ 1 & n.1.) Muratovic also attached to the Complaint a copy of two pages of the owner manual for an EZ Lock Pressure Cooker sold by Fagor America, Zavor's alleged predecessor. (Ex. A to the Compl. (Dkt. 2).)[3] For the purposes of this motion, the court assumes that Fagor America's "EZ Lock Pressure Cooker" was the device that allegedly injured

---

a motion for summary judgment and allow an opportunity for discovery. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). Accordingly, the court has excluded Zavor's affidavit and will not rely on it in reaching this decision.

[3] Muratovic did not reattach the exhibit to the Amended Complaint, but the Amended Complaint retains a reference to the exhibit, so the court assumes this was a clerical oversight.

Muratovic. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss... we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.").[4]

Fagor America's connection to Zavor is similarly murky. Fagor America was succeeded by an entity referred to as "FECNA."[5] (Am. Compl. ¶¶ 9-11.) FECNA was ultimately liquidated in bankruptcy in 2018. (*Id.* ¶ 13-14.) Muratovic alleges that Zavor was then founded by six individuals who worked at Fagor America/FECNA following the liquidation. (*Id.* ¶¶ 12-15.) Zavor now "continues the business of the sale of substantially similar or identical pressure cookers utilizing a new brand name and website." (*Id.* ¶ 16.)

On February 3, 2021, Muratovic filed a complaint in this action against Zavor America, Inc., bringing claims for strict liability, negligence, negligent design defect, negligent failure to warn, and breaches of implied warranties. (*See* Compl. (Dkt. 1).) The defendant did not answer or otherwise appear, and Muratovic requested—and was granted—an entry of default. (*See* Dkts. 8, 9.) Muratovic moved for a default judgment, (Mot. for Def. Judgment (Dkt. 10)), but ultimately withdrew that motion and sought to amend the complaint, which the court allowed. (*See* Aug. 9, 2021 Order; Nov. 30, 2021 Mot. to Withdraw (Dkt. 17); Nov. 30, 2021 Mot. to Amend (Dkt. 18); Dec. 10, 2021 Mem. & Order (Dkt. 19).) On December 22, 2021, Muratovic filed the First Amended Complaint, now naming Market Solutions Group, Inc. as defendant, but otherwise bringing the same claims as the original complaint. (*See generally* Am. Compl.) On July 28, 2022, the

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

[5] FECNA is an amalgamation of Fagor Electrodomésticos, Fagor America's parent company, and CNA Group, a company which acquired Fagor America in 2014. (Am. Compl. ¶ 9, 11.)

3

defendant filed the instant motion to dismiss for failure to state a claim. (*See* Mot.)

## II. LEGAL STANDARD

"In deciding a motion to dismiss, the court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *McGrath v. Bayer HealthCare Pharms. Inc.*, 393 F. Supp. 3d 161, 166 (E.D.N.Y. 2019) (quoting *LaFaro*, 570 F.3d at 472). Once the court has done so, the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A. Choice of Law

At the outset, the parties dispute which state's law applies in this diversity action. Zavor asserts that the law of the forum state, in this case New York law, applies. (*See* Mot. at 7-8.) Muratovic contests that the court must apply New York's choice of law rules, but that such application may, after discovery, show that New Jersey law applies. (*See* Opp. at 10-12.) Both arguments are wrong.

As a federal court sitting in diversity in New York state, the court must apply New York's choice of law rules to determine which substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). At the motion to dismiss stage, this analysis is based on the facts alleged in the complaint regarding connections to the various states, so no discovery is required. *See, e.g., Russo v.*

4

*United Recovery Sys., LP*, No. 14-CV-851 (RJD) (VVP), 2014 WL 7140498, at *2 (E.D.N.Y. Dec. 12, 2014) (reviewing complaint allegations regarding choice-of-law provision to determine choice of law in contract case).

In tort cases, "New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied," using "an evaluation of the facts or contacts which relate to the purpose of the particular law in conflict." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994). Here, the conflict arises between New York law, as the state where plaintiff resides and (presumably) was injured, (Am. Compl. ¶¶ 6, 24 (stating Muratovic was using the pressure cooker "for its intended purpose of preparing meals for herself and/or family," which the court assumes was occurring at home in New York)), and New Jersey law, as the state where Zavor is incorporated and has its principal place of business. (*Id.* ¶ 17.) The two states' laws differ with respect to the "product line exception," recognized in New Jersey but rejected in New York. *Compare Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 358 (1981) (recognizing the product line exception in New Jersey) *with New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 214 (2d Cir. 2006) (noting that the New York Court of Appeals has declined to adopt the product line exception).

Where courts are faced with a conflict of tort laws, New York's choice of law standards distinguish between "conduct-regulating" rules and "loss-allocating" rules. *Padula*, 84 N.Y.2d at 521-22; *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 424 (applying the same bifurcated choice of law analysis under New York law in products liability cases where the injury was caused in a different state from the defendant's domicile). As will be discussed further below, the product line exception (where adopted) provides an additional context where a company may

be held liable for products liability injuries caused by its predecessor. *See Lefever v. K.P. Hovnanian Enters., Inc.*, 160 N.J. 307, 310 (1999). Accordingly, this conflict over when a successor may be liable for defective products produced by a predecessor is a quintessential "loss allocating rule[]," as it "prohibit[s], assign[s], or limit[s] liability after the tort occurs[.]" *Padula*, 84 N.Y.2d at 522.

For conflicts regarding loss allocation, New York courts are guided by the standards set forth in *Neumeier v. Keuhner*, 31 N.Y.2d 121, 128 (1972) regarding different possible split-domicile contexts. *See Caruolo v. John Crane, Inc.*, 226 F.3d 46, 57 (2d Cir. 2000). For the purposes of this motion, the *Neumeier* court distinguished between "true conflicts, where the parties are domiciled in different States and the local law favors the respective domiciliary," that is, the plaintiff's state would allocate the loss to the defendant, while the defendant's state would allocate it to the plaintiff, and all other cases. *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 73-74 (1993) (quoting *Neumeier*, 31 N.Y.2d at 128).[6] In the former context, the location of the injury always provides the substantive law, while in the latter, "the rule is necessarily less categorical"—typically, the site of the tort will still provide the governing law, "but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier*, 31 N.Y.2d at 128.

Here, New York—the plaintiff's domicile—would allegedly favor the defendant Zavor, while New Jersey (Zavor's domicile) would

---

[6] *Neumeier* arose in the context where a vehicle passenger was injured in a crash caused by the driver of the car. 31 N.Y.2d at 123-24. The *Neumeier* rules therefore set forth a third option, not relevant here, where the driver and passenger are domiciled in the same state, but the accident occurred in another forum. *Id.* at 128.

6

favor Muratovic. Accordingly, this is not a "true conflict" automatically adopting the law of the place of the injury. *See, e.g., Vicuna v. O.P. Schuman & Sons, Inc.*, No. 13-CV-2834 (ERK) (VVP), 2015 WL 13636666, at *3 (E.D.N.Y. May 19, 2015). *Vicuna* addressed a highly similar context: a New York-domiciled plaintiff was injured by a product made by the alleged predecessor of a Pennsylvania-domiciled defendant, and sought to impose liability based on Pennsylvania's product line exception. *Id.* at *1-3. The court concluded that Pennsylvania law applied "[b]ecause New York's interests"—that is, the ability of one of its domiciliaries to recover for injuries sustained in the state—"are fulfilled through the application of Pennsylvania law and no Pennsylvania interest is harmed." *Id.* at *3.

The same conclusion is warranted here. New York's interests are served by Muratovic's ability to recover for the injury she sustained in New York. Zavor, as a New Jersey domiciliary, cannot claim a disadvantage from the application of the loss-allocation rule of its home state, nor can it claim that New Jersey's interests are harmed by application of its law to the instant dispute. Therefore, the court will apply New Jersey law with regard to the question of successor liability and the product line exception. As the parties do not dispute the use of New York law, the site of the injury, for the conduct-regulating rules, the court will apply New York law for the substantive elements of Muratovic's claims.

### B. Legal Standard for Plaintiff's Claims

As referenced above, Muratovic brings six counts in this action. (Am. Compl. ¶¶ 32-76.) Four of these—strict products liability, negligence, negligent design defect, and negligent failure to warn—are variations of products liability causes of action. "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use[.]" *Robinson v. Reed-Prentice Div. of Package Mach.*

Co., 49 N.Y.2d 471, 479 (1980). A failure to warn occurs "when a manufacturer fails to provide adequate warnings regarding the use of its product," because a manufacturer "has a duty to warn against latent dangers resulting from foreseeable uses of its products of which it knew or should have known." *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (1992). Under either theory, a manufacturer may be held strictly liable or liable for negligence. *Barban v. Rheem Textile Sys., Inc.*, No. 01-CV-8475 (ILG), 2005 WL 387660, at *7 (E.D.N.Y. Feb. 11, 2005).

The two remaining causes of action bring claims for breaches of implied warranties: the implied warranty of fitness for a particular purpose, *see* N.Y. U.C.C. § 2-315, and the implied warranty of merchantability, *see id.* § 2-314. Under New York law, both of these implied warranties arise in any contract for sale of goods. *Id.* § 2-315 ("Where the seller *at the time of contracting* has reason to know any particular purpose for which the goods are required . . . there is . . . an implied warranty that the goods shall be fit for such purpose.") (emphasis added); *id.* § 2-314 ("[A] warranty that the goods shall be merchantable is implied *in a contract for their sale* . . .") (emphasis added); *see also Anhui Konka Green Lighting Co. v. Green Logic LED Electr. Supply, Inc.*, __ F. Supp. 3d __, 2022 WL 4086831, at *4 (S.D.N.Y. Sept. 6, 2022) (stating that an implied warranty of merchantability "only arises in the context of an enforceable contract"). It is axiomatic that the formation of a contract requires offer and acceptance, and therefore parties who have voluntarily entered into the contract by offering and/or accepting. *Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 950 N.Y.S.2d 8, 9 (1st Dep't 2012).

A number of parties involved in the production and sale of a product may be held liable for defects or failures to warn, but Muratovic's products liability claims are premised on the actions of the entity that "designed, manufactured, sold, and supplied" the pressure cooker. (Am. Compl. ¶ 37; *see also id.* ¶¶ 42, 47, 62.)

Similarly, the causes of action regarding breach of implied warranty must be brought against the contracting party that sold the product. (*Id.* ¶¶ 65, 72 (stating that "[m]embers of the consuming public" were the beneficiaries of the implied warranties).) Muratovic implicitly concedes, though, that Zavor was not the entity that manufactured the pressure cooker that injured her, nor the entity that sold it, arguing instead that Zavor inherited the relevant liabilities from Fagor America, its alleged predecessor. (*Id.* ¶¶ 9, 16.) As a result, all of Muratovic's claims rest on whether the allegations support the application of successor liability under New Jersey law.

### C. Successor Liability

"The general rule of corporate-successor liability is that when a company sells its assets to another company, the acquiring company is not liable for the debts and liabilities of the selling company simply because it has succeeded to the ownership of the assets of the seller." *Lefever*, 160 N.J. at 310. Under New Jersey law, there are five recognized exceptions to this rule:

1) Where the successor company assumes the predecessor's liabilities by express or implied contract;
2) The acquisition of assets is consummated by "actual or *de facto*" consolidation or merger;
3) The successor is merely a continuation of the seller;
4) The parties utilize a fraudulent transaction to escape liability; or
5) The "product-line" exception, which applies to strict products liabilities in tort when the successor purchased "a substantial part of the manufacturer's assets" and continues to market the predecessor's product line.

*Id.* As is clear, these exceptions—including the "product-line" exception relied upon by Muratovic—generally require a corporate transaction of some sort between the predecessor and successor. The court has been unable to find any New Jersey law allowing

9

an entity to face liability for the injuries caused by another entity merely because they sell the same (or similar) products. *Cf. Arevalo v. Saginaw Mach. Sys., Inc.*, 344 N.J. Super. 490, 495-96 (App. Div. 2001) (applying product-line exception where defendant acquired the corporate division which originally manufactured the machine causing injury and continued to sell the product); *Bussell v. DeWalt Prods. Corp.*, 259 N.J. Super. 499, 517 (App. Div. 1992) ("Although [defendant] did not receive all of the exact assets that were transferred by [the manufacturer to the intermediary] . . . , [defendant] did receive all the assets and information that related to the manufacture of [the allegedly defective product].").

"Plaintiff bears the burden of establishing that a party is a successor corporation within the meaning of [New Jersey law]." *Potwora ex rel. Gray v. Grip*, 319 N.J. Super. 386, 406 (App. Div. 1999). But the Complaint contains no allegations of any transaction (nor any legal connection) between Fagor America (or FECNA) and Zavor. The only allegations which link the companies state that Patricio Barriga, Fagor America's "General Manager, Vice President, and President," and a number of other Fagor America employees, together started "a new company" in Zavor after Fagor America/FECNA was liquidated in bankruptcy. (Am. Compl. ¶¶ 12-15.) The Complaint's admission that Fagor America/FECNA ceased operations and Zavor was a new company, not a legal successor by any definition, are sufficient to defeat Muratovic's attempted reliance on the product-line exception.

Even had Muratovic alleged a legal tie between the manufacturer and the defendant, it is unclear if Zavor actually maintained the product line at issue in a literal sense, let alone in the legal fashion (involving the acquisition of the ability to manufacture) required by New Jersey law. As noted above, the Complaint does

10

not specify the precise Fagor America product which injured Muratovic; instead, it implies the injury was caused by the EZ Lock Pressure Cooker, and then provides a copy of Fagor America's owner's manual and a picture of Zavor's version of a product under the same name. This speculative and conclusory claim that the products are in fact the same has been rejected by at least one New Jersey court. *See Potwora*, 319 N.J. Super. at 405-06 (rejecting application of product-line exception because the only proof defendant manufactured the same product was plaintiff's attorney's "mere speculation" that a currently manufactured model looked the same as the injury-causing product).

For these reasons, Muratovic has failed to state a claim. If Muratovic can, in accordance with Federal Rule of Civil Procedure 11, allege facts showing Zavor purchased "substantially all" of Fagor America's assets and continued manufacturing the exact product that injured her, she may file a Second Amended Complaint as directed below. Similarly, Muratovic may amend the complaint if she can present allegations that Fagor America's employees utilized bankruptcy proceedings and started a new company to fraudulently avoid liability, or alleges facts illustrating the applicability of any other exception under New Jersey law.

### IV. CONCLUSION

For the aforementioned reasons, Zavor's motion to dismiss for failure to state a claim is GRANTED and this case is dismissed without prejudice. Muratovic will be given leave to amend the Complaint within thirty days of the date of this Memorandum and Order. If Muratovic fails to amend the Complaint by this time, the Complaint will be dismissed with prejudice.

SO ORDERED.

Dated:   Brooklyn, New York
         March 29, 2023

                                    s/Nicholas G. Garaufis
                                    ──────────────────────
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

12